# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMES M. HILL,

    Plaintiff,

  v.                                Case No. 20-CV-1667-SCD

COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## DECISION AND ORDER

    James M. Hill applied for social security disability benefits based on several mental impairments and chronic pain in his back and knees. After a hearing, an administrative law judge denied Hill's claim, finding that he was still capable of performing sit-down work with certain restrictions. Hill seeks judicial review of that decision. Because substantial evidence supports the ALJ's decision and Hill has failed to demonstrate that the ALJ committed an error of law in reaching his decision, I will affirm the denial of disability benefits.

## BACKGROUND

    On November 4, 2020, Hill filed this action seeking judicial review of the final decision of the Commissioner of Social Security denying his claims for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. United States District Judge J.P. Stadtmueller reassigned the matter to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 5, 6. Hill filed a brief in support of his disability claims, *see* ECF No. 19, and Kilolo Kijakazi (the Acting Commissioner of the Social Security Administration) filed a brief in support of the ALJ's

decision, *see* ECF No. 26. Hill did not file a reply brief, and the time to do so has now passed, *see* ECF No. 25 (extending the reply deadline to December 20, 2021).

I.    **Medical Background**

Though Hill suffers from a number of physical and mental impairments, he has three main problem areas: his back, his legs, and his mental health.

A.    **Back issues**

In 2006, Hill herniated a disc while at work. R. 874.[1] He underwent discectomy and fusion surgery, and, while in recovery, he became addicted to his opiate pain medication. R. 150, 874. The surgery did not relieve Hill's symptoms despite a follow-up revision, the implementation of a spinal cord stimulator and intrathecal pain pump, a lumbar sympathetic nerve block, and physical therapy. *See* R. 82, 150, 580, 874, 1095, 1288–91. Diagnostic imaging revealed findings consistent with Hill's complaint of persistent low back pain. R. 843–48, 862–63.

After failing conservative treatment, in October 2018, Hill underwent his third back surgery. *See* R. 47, 62, 201, 230, 577–97, 602–09, 646–50, 741–77, 800–03. The surgeon left in place the previously installed pain pump. *See id.* At a follow-up appointment two weeks after surgery, Hill reported overall improvement of his low back pain. R. 786. Upon examination, he rose easily, walked with a non-antalgic gait, had full strength in his lower extremities, had intact sensation, and demonstrated a negative straight leg raise. Hill's lumbar spine x-ray revealed mild degenerative disc disease with small osteophyte formation. R. 799.

Despite overall improvement in his back pain, Hill continued to exhibit symptoms post-surgery. At his one-month post-op appointment, Hill reported he still had pain with

---

[1] The transcript is filed on the docket at ECF No. 16-2 to ECF No. 16-20.

certain activities such as sitting up from lying down, walking more than a couple of blocks, bending to tie his shoes, and getting in his vehicle. R. 1095–96. Physical examinations at follow-up appointments revealed some tenderness, slightly reduced range of motion, decreased sensation, and an antalgic gait. *See* R. 1232, 1263, 1267, 1279, 1283, 1304, 1321–22, 1367. Also, Hill's pain pump was revised in April 2019 after it stopped working. R. 1235, 1256–60. Hill's pain management doctor, Timothy S. Staacke, MD, stressed the importance of regular activity, the benefits of a home regimen such as yoga or tai chi, and the necessity of consistent home stretching and exercise program. R. 1268.

### B. Osteoarthritis

As Hill's back pain persisted, he started developing pain in his lower extremities too. *See* R. 580–81. Diagnostic imaging revealed osteoarthritis in his knees and hips. R. 56, 118, 689, 927. Hill had arthroscopic surgery on his right knee in 2017. R. 71, 82, 509, 542. The following year, he had arthroscopic surgery on the left one. R. 38. After the surgeries, Hill had some initial relief with physical therapy and steroid injections, but the pain soon returned. *See* R. 82, 1230. Hill reported that his right knee was worse than his left and that he had increased pain with activity, especially stairs. R. 1230, 1265, 1270, 1280–81. Physical exams revealed some discomfort, reduced strength, difficulty sustaining extension, and an antalgic gait but no instability. *See* R. 1232–33, 1263, 1267, 1272, 1283, 1296–97, 1300, 1304–05, 1313–14, 1317–18, 1321–23, 1329, 1334–35, 1353–55, 1358, 1367, 1373–74, 1377–78. Despite Hill's ongoing knee issues, his orthopedic doctor did not recommend additional surgery. R. 1315.

### C. Mental Impairments

Hill also suffered from several mental impairments, including diagnoses of attention-deficit/hyperactivity disorder, bipolar disorder, generalized anxiety disorder, and major

3

depressive disorder. *See* R. 64, 151–52, 156, 1076, 1342. He was never hospitalized for mental-health issues and did not see a therapist, but he was prescribed various medications by a psychiatrist. R. 1076, 1344. Testing in September 2018 revealed significant distractibility, primarily in the visual realm. R. 1129–32. Throughout 2018 and 2019, Hill exhibited a dysthymic, anxious mood and an abnormal, constricted affect during mental-status examinations. *See* R. 1110–28, 1384–95. However, he also demonstrated unimpaired thought processes and normal thought content. *See id.*

In January 2020, Hill presented to a psychiatric advanced practice nurse practitioner for a psychiatric assessment. *See* R. 1344–51. He claimed that he fired his psychiatrist for being unhelpful and for not prescribing certain medications and reported gradually worsening mental-health symptoms, especially a depressed and anxious mood. R. 1344–45. During the mental-status exam, Hill was friendly, was well-groomed, and made good eye contact. R. 1350. He had no tics, tremors, or foot tapping, but he did occasionally wring his hands. He spoke with slow, occasionally slurred speech. He was oriented to person, place, and time. His mood was appropriate to the situation, normal, frank, and open, but also sad. He demonstrated coherent and logical thought process, and his thought content was consistent with reality. He also had good insight and judgment. The examining APNP diagnosed Hill with generalized anxiety disorder and major depressive disorder and adjusted Hill's medications. R. 1350–51.

## II. Administrative Background

In July 2018, Hill applied for disability insurance benefits and supplemental security income, alleging that he became disabled as of February 17, 2018. R. 13, 390–402. He listed several medical conditions on his disability applications: lumbar post laminectomy (two

4

times), chronic pain syndrome, polyarthralgia, anxiety, depression, asthma, emphysema, bilateral hand pain, paresthesia in both hands, carpal tunnel syndrome (both sides), sensorimotor neuropathy, and a low thyroid-stimulating hormone level. R. 425. Hill asserted that he stopped attending school in eleventh grade, he worked for years as a manual laborer in factories and warehouses, and he stopped working on February 17, 2018, due to his physical and mental conditions. R. 425–26.

In September 2018, Hill completed a function report in support of his disability applications. *See* R. 432–42. He claimed that his mental-health issues caused difficulty focusing and concentrating and gave him a short fuse; his back issues affected his ability to sit, stand, and walk for prolonged periods; and his knee issues made it difficult to stand, walk, crouch, kneel, squat, get up from a chair, twist, and rotate. R. 433. Hill estimated that he could lift only twenty pounds, sit for one to two hours at a time and five to six hours a day, stand for ten minutes at a time and four to five hours a day, walk for twenty to thirty minutes at a time and two hours a day, and pay attention for about two to five minutes. R. 439, 441. As for his daily activities, Hill reported that he had some difficulty getting dressed, bathing, and preparing meals; he cooked frozen dinners or ramen noodles; he did house and yard work like laundry, cleaning the dishes, dusting, and mowing (though he needed encouragement from others and sometimes it took at least the full day to complete); his mother (with whom he lived) did most of the shopping; he no longer was able to fish or play with his children, or work on vehicles or boats; and he hadn't spent much time with others since his back injury in 2006. *See* R. 435–39.

5

### A. State-agency review

The Social Security Administration referred Hill for consultative examinations because the evidence he submitted with his applications was inadequate to determine whether he was disabled. Kurt L. Reintjes, MD, examined Hill's orthopedic issues in November 2018. *See* R. 1072–75. Dr. Reintjes noted that Hill's back x-ray revealed post-surgical degenerative changes, but the x-ray of the left knee was normal. R. 1073. Upon examination, Hill's upper extremities all were within normal limits. He had some pain in his right knee with palpation, but there was no effusion, he was able to fully extend the knee, and his knee was stable. Hill did not exhibit any pain in his left knee, which also was fully stable. However, his gait did favor his right knee, and he had difficulty moving into a supine position. Given the recent surgery, Dr. Reintjes cautiously examined Hill's back. He noted that Hill was able to stand on his heels and toes without radicular complaints, but Hill told Dr. Reintjes that he could not perform any degree of extension. Dr. Reintjes' overall impression was mechanical lower back pain with recent spinal surgery and right knee pain. R. 1073–74.

Later that month, Anthony Wendorf, PsyD, performed the psychological evaluation. *See* R. 1076–80. Dr. Wendorf noted that Hill was well-groomed, dressed appropriately, and was cooperative throughout the appointment. R. 1078. He further noted that there was no evidence of psychomotor agitation or retardation. During the mental-status exam, Hill exhibited a depressed and anxious mood; his thought content appeared linear and logical; he demonstrated good remote, recent, and immediate memories, good fund of knowledge, good concentration, and good abstract thinking ability; and his judgment and insight into his own condition seemed to be severely impaired. Dr. Wendorf diagnosed Hill with bipolar disorder (type I) and opioid dependence and history of alcohol abuse (in full remission). R. 1079. As

6

for work capacity, Dr. Wendorf indicated that Hill showed moderate limitations in his ability to understand, remember, and carry out simple work instructions; marked limitations in his ability to respond appropriately to supervisors and coworkers; marked limitations in his ability to maintain concentration, attention, and work pace; and marked limitations in his ability to withstand routine work stresses and adapt to changes.

The Social Security Commissioner denied Hill's applications at the state-agency level of review. *See* R. 223–97. Jeffrey Nesta, MD, reviewed the medical record initially, and Larry Xanthopoulos, MD, reviewed the record upon Hill's request for reconsideration. Both reviewing physicians opined that Hill retained the capacity for work at the light exertional level if he avoided even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. R. 236–38, 254–56, 271–73, 288–90. Dr. Xanthopoulos further opined that Hill could only frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and frequently stoop, kneel, crouch, and crawl. R. 272, 289.

Robert Barthell, PsyD, and John Warren, EdD, reviewed the psychological records at the initial and reconsideration levels, respectively. Both reviewing psychologists opined that Hill's mental-health impairments were not presumptively disabling because he did not have an extreme limitation of one, or a marked limitation of two, of the four areas of mental functioning a person uses in a work setting (known in social security lexicon as the "paragraph B" criteria): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. R. 233–34, 251–52, 269–70, 286–87. On the mental residual functional capacity assessment form, they indicated that Hill had moderate limitations understanding and remembering, moderate limitations with sustained concentration and persistence, moderate social-interaction

7

limitations, and moderate adaptation limitations. R. 238–40, 256–58, 274–76, 291–92. Overall, Dr. Warren opined that Hill retained the capacity to understand and remember simple instructions; sustain the mental demands associated with carrying out simple tasks over the course of a routine workday/workweek within acceptable attention, persistence, and pace tolerances; and sustain the basic demands associated with relating adequately with supervisors and coworkers. R. 274–76, 291–92. However, according to Dr. Warren, Hill would be unable to interact appropriately with the general public. R. 275, 292.

After the Commissioner denied his applications at the state-agency level, Hill requested an administrative hearing before an ALJ. R. 333–34.

### B. Administrative hearing

On March 19, 2020, ALJ Brent Bedwell held an evidentiary hearing on Hill's disability applications. *See* R. 196–222. Hill testified at the hearing. *See* R. 201–12. When asked by the ALJ why he felt he couldn't work, Hill responded, "I'm pretty much in pain from the time I get up until the time I go to bed." R. 205. Hill told the ALJ that he had chronic pain in his back and both knees that was aggravated with any activity. He reported difficulty with any prolonged walking, standing, and lifting. According to Hill, he could walk for a couple of blocks and could stand for about ten minutes before he needed to move around. He claimed to have a permanent, twenty-pound lifting restriction and to be limited to no climbing stairs, kneeling, crawling, stooping, or twisting. Hill also told the ALJ that he suffered from several mental impairments, including bipolar disorder, ADHD, depression, and anxiety. He reported having difficulty staying focused and paying attention and getting really mad over nothing. Hill indicated that his physical issues were more limiting than his mental issues, but they both contributed to his inability to work.

The ALJ also heard testimony from a vocational expert. *See* R. 212–20. The vocational expert testified that a hypothetical person with Hill's age (forty-four years old at the time of the hearing), education (up to eleventh grade), and work experience (as a manual laborer) could not perform his past relevant jobs if he were limited to a restricted range of sedentary work. That person could, however, work as an assembler, an inspector, and a hand packager. The vocational expert indicated that no jobs would be available if the person also required two unscheduled breaks each day and that employers typically would tolerate no more than two unexcused absences a month.

### C. ALJ's decision

Applying the standard five-step analysis, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), on April 6, 2020, the ALJ issued a written decision finding that Hill was not disabled, *see* R. 10–32. The ALJ determined that Hill met the insured status requirements of the Social Security Act through March 31, 2023. R. 15. At step one, the ALJ determined that Hill had not engaged in substantial gainful activity since his alleged onset date. R. 15. The ALJ determined at step two that Hill had six severe impairments: degenerative disc disease status lumbar fusion, osteoarthritis, bipolar disorder, ADHD, anxiety, and depression. R. 15–16. At step three, the ALJ determined that Hill did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a presumptively disabling impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16–18. The ALJ found that Hill had a moderate limitation in his ability to understand, remember, or apply information; a moderate limitation in his ability to interact with others; a moderate limitation in his ability to concentrate, persist, or maintain pace; and a moderate limitation in his ability to adapt or manage himself. R. 17–18.

9

The ALJ next assessed Hill's residual functional capacity—that is, his maximum capabilities despite his limitations, *see* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ found that Hill had the RFC to perform a restricted range of sedentary work. R. 18. Specifically, the ALJ determined that Hill must be allowed to change positions between sitting and standing every thirty minutes, for a few minutes, before returning to sitting or standing. The ALJ also found that Hill must avoid exposure to pulmonary irritants such as fumes, odors, dust, and gases. And the ALJ found that Hill could never climb ladders, ropes, or scaffolds, and could only occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs. The ALJ's RFC assessment also included several mental limitations and restrictions. The ALJ found that Hill could perform jobs that were unskilled and involved simple and routine job tasks and instructions; could maintain attention and concentration for two-hour segments; and could perform jobs having only occasional decision-making and changes in work setting. The ALJ also found that Hill could have occasional interaction with coworkers and supervisors but no interaction with the public. In assessing that RFC, the ALJ considered Hill's subjective allegations, the medical evidence, and the medical opinion evidence and prior administrative findings. *See* R. 18–25.

The ALJ determined that the medical records failed to substantiate fully Hill's allegations of disabling symptoms and limitations. *See* R. 22–24. First, the ALJ considered Hill's allegations with respect to his back issues. The ALJ noted that diagnostic imaging prior to the latest back surgery revealed only "mild" findings. R. 22 (citing Exhibit 10F/1 [R. 843]). Also, according to the ALJ, treatment records suggested the 2018 fusion surgery improved Hill's lumbar spine condition. As support, the ALJ cited several post-op physical exams where Hill walked with a non-antalgic gait, had full motor function in his lower extremities, had

10

intact sensation, demonstrated a negative straight leg raise, and exhibited minimal tenderness. R. 22 (citing Exhibits 23F/34 [R. 1240], 57 [R. 1263], 66 [R. 1272], 77 [R. 1283], 99 [R. 1305], 161 [R. 1367]; 26F/2 [R. 1397]).

The ALJ next considered Hill's allegations relating to his osteoarthritis. The ALJ noted that diagnostic findings on Hill's knees were "minor," and the hip findings were "mild." R. 22 (citing Exhibits 23F/10 [R. 1216], 17 [R. 1223]). Also, according to the ALJ, Hill demonstrated good function with his lower extremities on examination. As examples, the ALJ cited exams showing no appreciable effusions, reasonably preserved range of motion, no instability, normal muscle tone, full flexion, normal tendon reflexes, normal gross and fine motor coordination, no tenderness, and an improved gait. R. 22 (citing Exhibits 23F/24–27 [R. 1230–33], 61 [R. 1267], 63 [R. 1269], 99 [R. 1305], 116 [R. 1322], 167 [R. 1373]). The ALJ also noted that Hill's orthopedic doctor recommended physical therapy but no further surgical intervention. R. 22 (citing Exhibit 23F/91 [R. 1297]).

Finally, the ALJ considered Hill's alleged mental-health symptoms. According to the ALJ, Hill demonstrated good function on examination despite his longstanding symptoms. The ALJ noted that Hill exhibited significant distractibility during testing in September 2018. R. 23 (citing Exhibit 16F/20 [R. 1129]). However, the ALJ described largely normal objective findings at the November 2018 psychological consultative exam with Dr. Wendorf, Hill's mental-status exams throughout 2018 and 2019, and the January 2020 psychiatric assessment. R. 23 (citing Exhibits 14F [R. 1076–80], 16F/1 [R. 1110], 3 [R. 1112], 9 [R. 1118], 11 [R. 1120], 15 [R. 1124], 17 [R. 1126]; 20F/21 [R. 1175]; 23F/34 [R. 1240], 70 [R. 1276], 99 [R. 1305], 144 [R. 1350]; 25F/1 [R. 1384], 3 [R. 1386], 5 [R. 1388], 9 [R. 1392], 11 [R. 1394]). The ALJ further noted that Hill had not been hospitalized or received intensive mental-health

11

treatment, Hill's treatment consisted of medication, Hill did not engage in therapy during the relevant period, and Hill did not report any medication side effects to his psychiatrist. R. 23–24 (citing 16F/1 [R. 1110], 3 [R. 1112], 9 [R. 1118], 11 [R. 1120], 15 [R. 1124], 17 [R. 1126]; 23F/144 [R. 1350]; 25F/1 [R. 1384], 3 [R. 1386], 5 [R. 1388], 9 [R. 1392], 11 [R. 1394]).

As for the opinion evidence, the ALJ first considered the opinions of Dr. Nesta and Dr. Xanthopoulos, the two state-agency reviewing physicians. R. 24. The ALJ determined that those opinions—limiting Hill to a restricted range of light work—were partially persuasive because they were consistent with the medical evidence available at the time of their reviews. However, according to the ALJ, more recent evidence suggested greater limitations, as reflected in the assessed RFC. The ALJ did not include limitations for work absences and additional time off task because, in the ALJ's view, the record showed good function on examination, Hill's right knee pain improved with treatment, and Hill's treatment providers recommended against a sedentary lifestyle.

Next, the ALJ considered the opinions of Dr. Barthell and Dr. Warren, the two state-agency reviewing psychologists. R. 24–25. The ALJ determined that those opinions—that Hill had at most moderate limitations in the paragraph B criteria—were persuasive because they were consistent with the medical evidence of record, including Hill's diagnoses of bipolar disorder, ADHD, depression, and anxiety. However, according to the ALJ, further mental limitations were not warranted given that treatment records and the psychological consultative exam showed largely normal mental-status exams.

The ALJ then considered the opinions of Dr. Wendorf, the psychological consultative examiner. R. 25. The ALJ determined that Dr. Wendorf's opinions—that Hill had marked limitations in his ability to respond appropriately to supervisors and coworkers; maintain

12

concentration, attention, and work pace; and withstand routine work stresses and adapt to changes—were not persuasive because they were inconsistent with the medical evidence of record. The ALJ mentioned two examples. First, according to the ALJ, Dr. Wendorf's opined limitations were inconsistent with his own objective exam findings, which were normal. Second, in the ALJ's view, Dr. Wendorf's opined limitations also were inconsistent with the treatment records, which showed largely normal mental-status exams.

Finally, the ALJ considered the opinions of Dr. Staacke, Hill's pain management doctor. R. 25. In June 2018, Dr. Staacke indicated that Hill had a permanent, twenty-pound lifting restriction. R. 485. Dr. Staacke further indicated that Hill should avoid kneeling, stooping, squatting, and climbing stairs and ladders until his right knee was evaluated further. The ALJ determined that Dr. Staacke's opinions were partially persuasive. The ALJ credited the lifting restriction but gave no weight to the other restrictions, finding them temporary. As support, the ALJ cited a treatment note from February 2019, which referenced the lifting restriction but not the others. R. 25 (citing Exhibit 15F/4 [R. 1084]).

The ALJ then continued with the sequential evaluation process. At step four, the ALJ determined that Hill was not able to perform any past relevant work. R. 25–26. The ALJ determined at step five that there were jobs that existed in significant numbers in the national economy that Hill could perform. R. 26–27. Relying on the vocational expert's testimony, the ALJ mentioned three examples: assembler, inspector, and hand packager. R. 27. Based on those findings, the ALJ determined that Hill was not disabled from his alleged onset date through the date of the decision.

The Social Security Administration's Appeals Council denied Hill's request for review, R. 1–6, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse a Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, I must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

# DISCUSSION

Substantial evidence supports the ALJ's decision. The ALJ denied Hill's applications for disability benefits at step five, finding that Hill could still work if he were limited to a restricted range of sedentary work—that is, the most restrictive category under social security regulations. The medical and opinion evidence in the record supports that finding.

Let's start with the medical evidence. The ALJ thoroughly considered the medical evidence, discussing findings that supported Hill's alleged symptoms and the ALJ's assessed RFC. For example, the ALJ noted Hill's back and knee surgeries and discussed exams in which he exhibited back tenderness, reduced range of motion, and a dysthymic/anxious mood. The ALJ also noted that Hill's diagnoses—degenerative disc disease, osteoarthritis, bipolar disorder, ADHD, generalized anxiety disorder, and major depressive disorder—supported significant physical and mental limitations. However, according to the ALJ, the medical records did not fully substantiate Hill's allegations that those impairments caused disabling symptoms and limitations. The ALJ cited in support diagnostic imaging revealing only "mild" or "minor" findings; treatment records suggesting that Hill's back issues improved following his most recent surgery; physical exams showing good overall function, including a normal gait, full motor function, intact sensation, a negative straight leg raise, and minimal tenderness; and Hill's relatively normal psychological findings during the November 2018 psychological consultative exam with Dr. Wendorf, Hill's mental-status exams throughout 2018 and 2019, and the January 2020 psychiatric assessment. The medical records therefore constitute substantial evidence in support of the ALJ's assessed RFC.

The opinion evidence in the record also supports the ALJ's RFC assessment. First, the ALJ's assessed physical RFC is more restrictive than the findings of the state-agency

reviewing physicians. The two reviewing physicians believed that Hill was capable of light exertional work with several additional restrictions. The ALJ, however, limited Hill to sedentary work with several postural and environmental limitations. According to the ALJ, further limitations for work absences and time off task were not warranted given Hill's improvement following surgery, Hill's good function during exams, and recommendations from Hill's treatment providers that he avoid a sedentary lifestyle.

Second, the opinion of Hill's pain management doctor, Dr. Staacke, also supports the ALJ's assessed physical RFC. Dr. Staacke determined that Hill had a permanent lifting restriction of twenty pounds. The ALJ accommodated this opined limitation by restricting Hill to sedentary work, which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 42 C.F.R. §§ 404.1567(a), 416.967(a). The ALJ also noted the other restrictions assessed by Dr. Staacke—no kneeling, stooping, squatting, or climbing stairs or ladders—but reasonably did not include them in the RFC assessment because they were only temporary. In other words, those restrictions did not last for at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months").

Hill argues that the temporary restrictions were still in place at the time of the ALJ's decision. *See* ECF No. 19-1 at 4. However, he cites no evidence to support this argument, and the evidence that is in the record seems to contradict it. Dr. Staacke explicitly stated that those restrictions were "[t]emporary . . . until further evaluation of the right knee." R. 485. A treatment note from nine months later indicated that Hill's "pain management doctor has him

16

on a 20-pound long-term lifting restriction for work." R. 1084. That the note did not mention the other restrictions suggests further evaluation on the right knee revealed they were no longer necessary. Moreover, Hill does not cite any evidence demonstrating that he would be unable to perform the jobs identified by the vocational expert and adopted by the ALJ at step five if the RFC had included the temporary restrictions. Indeed, it appears that a person with Hill's age and education could still work as an assembler, an inspector, and a hand packager if he were precluded from kneeling, stooping, squatting, and climbing stairs or ladders. *See* ECF Nos. 26-1, 26-2, 26-3. Any error regarding the temporary restrictions identified by Dr. Staacke was therefore harmless.

Hill maintains that Dr. Staacke encouraged him to apply for disability benefits and was "baffled" that the Social Security Commissioner denied his applications. ECF No. 19 at 3. However, the fact that a treating provider disagrees with the ALJ's decision is not enough to overturn that decision, which is a based on a blend of medical and legal reasoning. And Dr. Staacke did not opine that Hill was more limited than the ALJ's assessed physical RFC.

Finally, the findings of the state-agency reviewing psychologists support the ALJ's assessed mental RFC. The reviewing psychologists opined that Hill's mental impairments were not presumptively disabling because they resulted in at most moderate limitations in his mental functioning. Dr. Warren translated those findings into narrative limitations, opining that Hill retained the capacity to understand and remember simple instructions; sustain the mental demands associated with carrying out simple tasks over the course of a routine workday/workweek within acceptable attention, persistence, and pace tolerances; and sustain the basic demands associated with relating adequately with supervisors and coworkers. Dr. Warren also opined that Hill would be unable to interact appropriately with the general public.

17

The ALJ accommodated those opined limitations by finding that Hill could perform jobs that were unskilled and involved simple and routine job tasks and instructions; maintain attention and concentration for two-hour segments; perform jobs having only occasional decision-making and changes in work setting; and have occasional interaction with coworkers and supervisors but no interaction with the public. Thus, the ALJ's assessed mental RFC was at least as restrictive as the opinions of the reviewing psychologists.

In assessing Hill's mental RFC, the ALJ reasonably found unpersuasive the opinions of Dr. Wendorf (the psychological consultative examiner) that Hill had marked limitations in his ability to respond appropriately to supervisors and coworkers; maintain concentration, attention, and work pace; and withstand routine work stresses and adapt to changes. As the ALJ noted, those significant limitations were inconsistent with Dr. Wendorf's own objective exam findings, where he noted that Hill was cooperative; had linear and logical thought content; and had good remote and recent memory, fund of knowledge, concentration, and abstract thinking. Dr. Wendorf's opined limitations also were inconsistent with the other mental-status exams in the record.

None of the information Hill included in his brief (or the attachments thereto) provides a basis for remand. He states, "I have a lot going on in my head," including panic attacks, depression, anxiety, bipolar disorder, and ADHD. ECF No. 19 at 1; ECF No. 19-1 at 3 (treatment note listing Hill's medical problems). The ALJ acknowledged that those mental impairments resulted in several limitations. However, the ALJ determined that the medical evidence in the record was inconsistent with Hill's claim that he suffered from disabling mental symptoms and limitations. Hill has not demonstrated that finding to be "patently wrong." *See Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) ("So long as an ALJ gives

18

specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong.") (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). Hill also states that his back, knees, and feet cause constant, daily pain and that his pain pump does not provide him enough relief to work even at its maximum setting. *See* ECF No. 19 at 1–4. But again, the ALJ considered those impairments in his decision and assessed a very restrictive RFC that accommodated their resulting limitations; Hill has not demonstrated that the ALJ erred in rejecting his claim of disabling physical symptoms and limitations.

Overall, Hill has not cited any evidence showing that he was more functionally limited than the ALJ found he was at the time of his decision. His arguments amount to disagreement with the ALJ's conclusions and how the ALJ interpreted the evidence. However, the substantial-evidence standard of review precludes me from substituting my judgment (or the plaintiff's judgment) for that of the ALJ's by reweighing the evidence. *See Anders v. Saul*, 860 F. App'x 428, 434 (7th Cir. 2021) ("On balance, and mindful of the deference owed to an ALJ's decision under the substantial evidence standard, we will not substitute our judgment for that of the ALJ's by reweighing the evidence.") (citing *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020)). Hill has not identified any error in the ALJ's decision, and neither have I.

## CONCLUSION

For all the foregoing reasons, I find that substantial evidence supports the ALJ's decision and that Hill has not demonstrated that the ALJ committed reversible error in denying his disability claims. Thus, I **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 1st day of March, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge